UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

BRANDON GOLLU,

                              Plaintiff,

              v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

-------------------------------------------------------------

NOT FOR PUBLICATION

**<u>MEMORANDUM & ORDER</u>**
20-CV-4416 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Brandon Gollu filed the above-captioned action on September 16, 2020 pursuant

to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking review of a final decision of the Commissioner

of Social Security (the "Commissioner"), denying his claim for Disabled Child Benefits and

Supplementary Security Income disability benefits under the Social Security Act (the "SSA").

(Compl., Docket Entry No. 1.)  The Commissioner moves for judgment on the pleadings arguing

that the decision of Administrative Law Judge Christine Cutter (the "ALJ") is supported by

substantial evidence.  (Comm'r's Notice of Mot. for J. on Pleadings, Docket Entry No. 13;

Comm'r's Mem. of Law in Supp. of Mot. for J. on the Pleadings ("Comm'r's Mem."), Docket

Entry No. 14.)  Plaintiff cross-moves for judgment on the pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure, claiming that the decision of the ALJ is not supported by

substantial evidence and does not correctly apply the relevant legal standards and should

therefore be remanded.  (Pl.'s Mot. for J. on Pleadings, Docket Entry No. 19; Pl.'s Mem. of Law

in Supp. of Mot. for J. on the Pleadings, ("Pl.'s Mem."), Docket Entry No. 20.)

      For the reasons set forth below, the Court denies the Commissioner's motion for

judgment on the pleadings and grants Plaintiff's cross-motion for judgment on the pleadings.

## I.  Background

Plaintiff is a twenty-eight-year-old man who completed high school and attended college but did not obtain a degree.  (Certified Admin. R. ("R.") 85, 257, 263, Docket Entry No. 9.) Plaintiff filed a claim for Child Insurance Benefits under his deceased mother's Social Security Earnings record and Supplemental Security Income disability benefits.  (R. 257, 263.)  He alleged a disability onset date of August 25, 2016.  (*Id.*)

Plaintiff's claim was denied on September 28, 2017.  (R. 142–54.)  Plaintiff requested a hearing before an administrative law judge, (R. 156–58), which was held on August 19, 2019, (R. 79–106).  The ALJ concluded that Plaintiff has not been under a disability at any time prior to July 18, 2017, the date on which Plaintiff attained age twenty-two or under a disability since the application was filed and therefore, Plaintiff was not entitled to child's insurance benefits or supplemental security income.  (R. 24.)  Plaintiff requested review by the Appeals Council, (R. 252–56), which denied his request for review on July 15, 2020, thus making the Commissioner's decision final, (R. 1–4).  Plaintiff filed a timely appeal with the Court.  (Compl.)

### a.  ALJ hearing

Plaintiff appeared in-person at an August 19, 2019 hearing before the ALJ represented by a paralegal from the Legal Aid Society.  (R. 109–117, 78–106, 331.)  During the hearing, the ALJ heard testimony from Plaintiff and a vocational expert, Tricia Muth (the "VE").  (R. 103–106.)

Plaintiff testified about, among other things, being assaulted in college, developing medical issues including chest pains and an inability to sweat, and the effect it had on him.

The ALJ asked the VE:

> [P]lease assume a hypothetical individual with no past work.
> Further assume the individual is limited to the following non-

> exertional limitations.  The individual [is] able to perform simple, routine tasks for two hour blocks of time over the course of a normal work schedule.  Never work in extreme heat and never work outside. The individual can further never climb ladders, ropes, or scaffolds; never work at unprotected heights or with dangerous moving machinery.  Could that hypothetical individual perform any work and if so can you give me a few examples with numbers of jobs for each occupation.

(R. 103.)  The VE testified that an individual of the same age, education, and vocational background as Plaintiff could perform the jobs of small parts assembler (Dictionary of Occupational Titles (DOT) #706.684-022, with 196,000 positions in the national economy) and cashier (DOT #211.462-010, with 1,276,000 positions in the national economy).  (R. 103–05.) The VE stated the DOT did not address issues related to working outdoors or the use of a cane, and therefore her testimony in that regard was based on her training, education, and experience. (R. 104.)  The VE also testified in response to a question that such an individual could be "off task" at a maximum of ten percent of the time in order to still perform those jobs.  (R. 106.) Further, the VE confirmed that if an individual was consistently off task fifteen percent of the time because of his need to take more frequent rest breaks and his medical conditions would make the person overheated, such a person would not be able to perform any work.  (R. 106.)

       **b.   The ALJ's decision**

       The ALJ conducted the five-step sequential analysis as required by the SSA.  (R. 12–24.) First, the ALJ found that Plaintiff had not attained age twenty-two as of August 25, 2016, the alleged onset date, and that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (R. 14.)

       Second, the ALJ found that Plaintiff had severe impairments of depression, PTSD, and anxiety.  (*Id.*)  However, the ALJ also found that Plaintiff's postural orthostatic tachycardia

syndrome ("POTS"),[1] carpal tunnel syndrome of the right wrist, tendonitis left wrist, lumbar spine disc building, herniated disc, and obesity are non-severe conditions.  (*Id.*)  The ALJ concluded that "in [the] light most favorable to the claimant," she incorporated "light work, the avoidance of extreme heat, and work that is performed outdoors into the residual functional capacity," as well as "the use of a cane for ambulation . . . despite the record documenting normal gait without the use of a cane."  (R. 15.)  In addition, the ALJ considered the opinions of the various medical professionals who evaluated Plaintiff and found certain medical opinions persuasive while discounting others.  (R. 16–17.)

Third, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P."  (R. 17.)  The ALJ found that Plaintiff has mild limitations in the areas of understanding, remembering, applying information, interacting with others, adapting or managing oneself, and moderate limitations with regard to concentrating, persisting, or maintaining pace.  (R. 17–19.)

Fourth, the ALJ found that Plaintiff has the "residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] is able to perform simple routine task[s] for [two] hour blocks of time over the course of a normal work schedule; never work in extreme heat and never work outside; [Plaintiff] can never climb ladders, ropes, or scaffolds; never work at unprotected heights or with dangerous moving machinery; [and that

---

[1] POTS is a condition that affects blood flow.  The primary symptoms include lightheadedness, fainting, and a rapid increase in heartbeat when standing up from a reclining position, which is relieved by sitting or lying back down. Exercise, diet and nutrition, and medication are used to manage symptoms.  Cleveland Clinic, *Postural Orthostatic Tachycardia Syndrome (POTS)*, https://my.clevelandclinic.org/health/diseases/16560-postural-orthostatic-tachycardia-syndrome-pots (last reviewed Sept. 9, 2022).

Plaintiff] may need to use a cane to ambulate." (R. 19.) In addition, the ALJ was persuaded by the State Agency (DDS) mental assessment completed by Dr. S. Juriga, Ph.D, and was not persuaded by the opinions of Dr. David Lefkowitz, Ph.D. (R. 21–23.)

Finally, the ALJ found that Plaintiff has no past relevant work, was twenty-one years old on the alleged disability onset date, has at least a high school education and can communicate in English, and that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 23.) The ALJ found that the VE's testimony that Plaintiff could perform the requirements of occupations such as small parts assembler and cashier II as consistent with the information contained in the Dictionary of Occupational Titles (DOT). (R. 24.) Based on the testimony and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that Plaintiff was "not disabled." (R. 24.)

The ALJ concluded that Plaintiff has not been under a disability at any time prior to July 18, 2017, the date which Plaintiff attained age twenty-two or under a disability since the application was filed and therefore, Plaintiff was not entitled to child's insurance benefits or supplemental security income. (R. 24.)

## II. Discussion

### a. Standard of review

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v.*

*Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.

2009)); *see also Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam) (same);

*McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (same).  Once an ALJ finds facts, the court

"can reject those facts only if a reasonable factfinder would have to conclude otherwise."

*Talyosef v. Saul*, 848 F. App'x 47, 48 (2d Cir. 2021) (quoting *Brault v. Soc. Sec. Admin.*, 683

F.3d 443, 448 (2d Cir. 2012)).  In deciding whether substantial evidence exists, the court

"defer[s] to the Commissioner's resolution of conflicting evidence."  *Smith v. Berryhill*, 740 F.

App'x 721, 726 (2d Cir. 2018) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir.

2012)).  If, however, the Commissioner's decision is not supported by substantial evidence or is

based on legal error, a court may set aside the Commissioner's decision.  *See Ewen v. Saul*, No.

19-CV-9394, 2021 WL 1143288, at *11 (S.D.N.Y. Mar. 23, 2021) (citing *Moran*, 569 F.3d at

112); *see also Prince v. Astrue*, 514 F. App'x 18, 19–20 (2d Cir. 2013) (first citing 42 U.S.C. §

405(g); then citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  "In making such

determinations, courts should be mindful that '[t]he Social Security Act is a remedial statute

which must be 'liberally applied'; its intent is inclusion rather than exclusion.'"  *McCall v.*

*Astrue*, No. 05-CV-2042, 2008 WL 5378121, at *8 (S.D.N.Y. Dec. 23, 2008) (alteration in

original) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983)).

### b.   The ALJ improperly discounted Plaintiff's POTS and carpal tunnel syndrome as non-severe

Plaintiff moves for judgment on the pleadings, arguing that the ALJ improperly

discounted his established medical impairments.  (Pl.'s Mem. 19.)  In support, Plaintiff argues

that the "ALJ misapprehended the nature of POTS" because her analysis "was made without any

reference to the tachycardia or the need to lie down . . .  and, as such, is fatally deficient in

accounting for this significant functional restriction."  (*Id.* at 20.)  Plaintiff argues that the ALJ's

findings regarding POTS were at odds with the medical evidence because the ALJ did not consider the "related phenomenon of a significantly increased heart rate simply from moving from a seated to a standing position." (*Id.* at 21.)  In addition, Plaintiff argues that the ALJ dismissed his carpal tunnel syndrome as non-severe without making "any reference to the relevant objective diagnostic testing." (*Id.* at 22.)  Plaintiff argues that the Court should reject the ALJ's conclusions that his POTS and carpal tunnel syndrome are non-severe impairments because the ALJ selectively read the record and excluded relevant objective medical testing. (*Id.*)

The Commissioner argues that substantial evidence supports the ALJ's disability analysis. (Comm'r's Mem. 14.)  First, the Commissioner argues that the ALJ properly evaluated the severity of Plaintiff's impairments at step two because "objective medical evidence related to Plaintiff's physical health was largely normal or showed only mild abnormalities." (*Id.* at 16.) As for Plaintiff's complaints of an inability to stand or walk for more than a few minutes, the Commissioner argues that "the record does not show an inability to sweat or any objective-based restriction from his doctors that he should not engage in any physical activity due to an inability to sweat." (*Id.* at 17.)  In addition, the Commissioner argues that the ALJ considered the various medical opinions and properly discussed the persuasiveness of each. (*Id.* at 18–19.)  Second, the Commissioner argues that the ALJ properly evaluated Plaintiff's impairments under the listings in 20 C.F.R. Part 404 Subpart P, Appendix 1. (*Id.* at 19–21.)

In the second step of the five-step analysis, the ALJ must determine whether a claimant has a severe impairment or a combination of impairments.  An impairment is considered "severe" if it significantly limits an individual's physical or mental abilities to do basic work activities and persists for at least twelve months.  SSR 96-3p, 1996 WL 374181, at *1 (S.S.A.

July 2, 1996); 20 C.F.R. § 404.1520(c); *see also Cardoza v. Comm'r of Soc. Sec.*, 353 F. Supp.

3d 267, 279–80 (S.D.N.Y. 2019).  Basic work functions are related to an individual's ability and

aptitude to perform most jobs such as "walking, standing, sitting, lifting, pushing, pulling,

reaching, carrying, or handling . . . seeing, hearing, and speaking . . . [u]nderstanding, carrying

out and remembering simple instructions . . . [u]se of judgment . . . [r]esponding appropriately to

supervision, co-workers and usual work situations." *Cardoza*, 353 F. Supp. 3d at 279–80 (citing

*Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012)); 20 C.F.R. § 404.1522(b); *George A.

v. Comm'r of Soc. Sec.*, No. 20-CV-00691, 2021 WL 2102527, at *5 (W.D.N.Y. May 25,

2021).  A severe impairment must persist for at least twelve months.  *See* 42 U.S.C. §

423(d)(1)(A) (Disability involves impairment "which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months.").  An

impairment is considered "not severe" if it only has a minimal effect on an individual's ability to

perform basic work functions.  SSR 96-3p, 1996 WL 374181, at *1; *see Bowen v. Yuckert*, 482

U.S. 137, 154 n.12 (1987).  The "mere presence" of a disease or impairment or a diagnosis on its

own is not sufficient to make the condition severe.  *Bourdier v. Saul*, No. 19-CV-205, 2020 WL

705211, at *6 (E.D.N.Y. Feb. 12, 2020) (first citing *Taylor*, 32 F. Supp. 3d at 265; then citing

*Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  The burden is on the plaintiff to

establish that any impairment they allege is severe.  *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d

Cir. 1995).

       The ALJ determined that Plaintiff had severe impairments, namely depression, PTSD,

and anxiety, and also suffered from POTS and carpal tunnel syndrome as non-severe

impairments.  (R. 14.)  In making the determination that Plaintiff's POTS is a non-severe

impairment, the ALJ relied on the fact that Plaintiff "has normal gait without the use of a cane,

full strength throughout, almost full range of motion throughout, normal movements of all extremities, intact reflexes, and intact sensation" and that multiple medical professionals recommended that Plaintiff engage in exercises. (*Id.*) However, based on the medical evidence, the ALJ's assessment of POTS as a non-severe impairment is not supported by substantial evidence. When Plaintiff underwent testing in November of 2016, the results demonstrated that Plaintiff had an increased heart rate when standing. (R. 397.) A change in heart rate from 80 beats per minute while sitting to 140 beats per minute upon standing was observed by Dr. Jessica Robinson-Papp, M.D. (*Id.*) Dr. Robinson-Papp returned Plaintiff to a supine position to normalize his heart rate. (*Id.*) The ALJ's analysis of the severity of Plaintiff's POTS was done without reference to Plaintiff's tachycardia or the need to lie down. In addition, Plaintiff's own testimony regarding POTS supports the medical evidence. Plaintiff testified that he could walk for only a couple of minutes before getting chest pain because he could not sweat, stand for only a few minutes, sit for up to two hours at a time, and was only able to lift a couple of pounds. (R. 90–91.) Plaintiff also testified that he could only stand for a few minutes at a time because he started to feel dizzy and lightheaded. (*Id.*) The totality of the evidence undermines the ALJ's assessment of Plaintiff's POTS as non-severe, and requires remand. *See Lawless v. Comm'r of Soc. Sec.*, No. 20-CV-04221, 2023 WL 2473101, at *4 (E.D.N.Y. Mar. 13, 2023) (remanding where ALJ did not adequately weigh medical opinions that explained how plaintiff's POTS "impact[ed] her ability to perform activities of daily living, ambulate, complete tasks, and attend school"); *Schultz v. Saul*, No. 18-CV-5919, 2020 WL 5752138, at *4 (E.D.N.Y. Sept. 25, 2020) (remanding where the ALJ discounted medical opinion noting that plaintiff's POTS prevented her from standing or walking for significant portions of the workday); *Drabczyk v. Comm'r of Soc. Sec.*, No. 18-CV-355, 2020 WL 4390701, at *5 (W.D.N.Y. July 31, 2020) (granting

plaintiff's motion for judgment on the pleadings where the ALJ discounted medical evidence that noted that the plaintiff's "nearly disabling symptoms of lightheadedness associated with position changes, fatigue, dizziness, and syncope episodes that stemmed from plaintiff's diagnoses with POTS," and plaintiff's hearing testimony "where she testified that POTS caused her to experience dizziness, nausea, blurred vision, episodes of syncope and weakness that often lasted several hours and required her to immediately sit down and put her feet up in the air").

       In making the determination that Plaintiff's carpal tunnel syndrome is a non-severe impairment, the ALJ relied on the fact that Plaintiff's symptoms were "self-reported" as improved with splints. (R. 15.) In addition, the ALJ found that "physical testing does not demonstrate abnormalities with the upper extremities" and that Plaintiff "has full strength, normal movements, intact reflexes and sensation, and normal hand dexterity." (*Id.*) The ALJ also relied on the lack of intensive treatments for Plaintiff's carpal tunnel syndrome to support the conclusion that the carpal tunnel is no more than minimally limiting. (*Id.*) However, the ALJ failed to acknowledge the medical evidence demonstrating that Plaintiff's carpal tunnel syndrome is severe. On September 10, 2016, Plaintiff underwent a test and the nerve conduction velocity and electromyography report of the upper extremities revealed evidence of mild bilateral median sensory demyelinating neuropathy at the wrist consistent with a diagnosis of carpal tunnel syndrome. (R. 391–95.) The same report showed evidence of an unspecified mild bilateral ulnar sensory demyelinating neuropathy. (*Id.*) In addition, the ALJ did not acknowledge the April 4, 2017 magnetic resonance image ("MRI") of Plaintiff's right wrist which showed mild malalignment of the distal radioulnar joint with evidence of prior injury or degeneration. (R. 777.) Plaintiff also testified that he used wrist splints for his carpal tunnel syndrome which indicates that it was severe enough to impact his daily life. (R. 88–89.) Based

on the totality of the evidence, the Court finds that the ALJ's determination that Plaintiff's carpal tunnel syndrome is non-severe was not supported by substantial evidence, which requires remand. *See Dorta v. Saul*, No. 18-CV-396, 2019 WL 3503961, at \*11 (S.D.N.Y. Aug. 2, 2019) ("The reports from [the plaintiff's] physicians combined with his own testimony raise [the plaintiff's] carpal tunnel syndrome above the *de minimis* level. On remand, the ALJ should reconsider whether [plaintiff's] carpal tunnel syndrome is a severe impairment." (footnote omitted)); *Davila v. Comm'r of Soc. Sec.*, No. 16-CV-4774, 2018 WL 5017748, at \*12–17 (E.D.N.Y. Oct. 16, 2018) (finding that the ALJ's opinion that plaintiff's carpal tunnel was not severe was not based on substantial evidence when considering the plaintiff's function report and the evaluating physicians' opinions that plaintiff's carpal tunnel gave rise to significant limitations); *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 155 (N.D.N.Y. 2012) ("At the very least, the ALJ should have given more consideration as to whether [the plaintiff's] diagnosed and documented carpal tunnel syndrome resulted in more than a *de minim[i]s* limitation on her ability to manipulate objects and use her hands . . . more generally in the performance of basic work activities. . . . A remand is therefore recommended for reconsideration of this issue.").

          c.    **The ALJ's determination that there are jobs in the national economy that Plaintiff is capable of performing is not supported by substantial evidence**

Plaintiff argues that the VE's testimony regarding the jobs Plaintiff could perform was in conflict with the parameters of the ALJ's request for jobs requiring the ability to perform no more than "simple, routine tasks." (Pl.'s Mem. 23–25.) In support, Plaintiff argues that the jobs the VE provided, small parts assembler and cashier II, require reasoning levels that are too high for the ALJ's request for "simple and routine tasks." (*Id.* at 24.)

The Commissioner contends that the ALJ properly found Plaintiff capable of performing other work existing in significant numbers in the national economy. (Comm'r's Mem. 25.) In

support, the Commissioner argues that the ALJ properly relied on the VE's testimony and that the VE stated the DOT "did not address issues related to working outdoors or the use of a cane, and therefore her testimony in that regard was based on her training, education, and experience." (*Id.*)

When the ALJ relies on a vocational expert's testimony to satisfy the burden, "a 'hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony.'" *Goulbourne v. Saul*, No. 18-CV-2377, 2020 WL 3960504, at *6 (E.D.N.Y. July 13, 2020) (quoting *Gray v. Astrue*, No. 06-CV-0456, 2009 WL 790942, at *14 (N.D.N.Y. Mar. 20, 2009)); *see also Melligan v. Chater*, No. 94-CV-944S, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996) ("In order to rely on a vocational expert's opinion: the hypothetical question posed to a vocational expert must fully set forth a claimant's impairments." (internal quotation marks omitted)).

The ALJ posed the following hypothetical to the VE:

> Could you please assume a hypothetical individual with no past work. Further assume the individual is limited to the following non-exertional limitations. The individual [is] able to perform simple, routine tasks for two hour blocks of time over the course of a normal work schedule. Never work in extreme heat and never work outside. The individual can further never climb ladders, ropes, or scaffolds; never work at unprotected heights or with dangerous moving machinery. Could that hypothetical individual perform any work and if so can you give me a few examples with numbers of jobs for each occupation.

(R. 103.) The VE testified that such an individual could work as a small parts assembler, cashier II, and mail clerk. (R. 103–04.) The VE also stated that "the DOT does not specifically address having to go outdoors. So my testimony there is based on my training, education, experience, and knowledge of how jobs are performed in the labor market." (*Id.*) Plaintiff then challenged the VE's testimony and questioned how he could carry out the duties of a cashier when he has to

"sit down multiple times a day and [has] to lay down multiple times a day" and also questioned how he could perform the job of parts assembly which "requires constant moving" when he has issues with sweating.  (R. 105–06.)  The ALJ reframed the question to the VE asking what the "maximum [time] off task that an individual could be and still perform those jobs" to which the VE replied "[ten] percent."  (R. 106.)

The ALJ failed to include Plaintiff's limitations when asking the VE hypothetical questions.  The ALJ failed to include the significant amount of time per day that Plaintiff cannot stand or walk due to his POTS.  Because the ALJ erred in finding that Plaintiff's POTS was non-severe, the ALJ erred by failing to include that necessary limitation when questioning the VE.  Although the ALJ alluded to Plaintiff's limitations when asking the VE about the maximum time an individual working as a small parts assembler or cashier could be off task, the VE's answer that Plaintiff could only be off task for ten percent of the day demonstrates that Plaintiff likely does not have the ability to do those jobs.  In addition, the ALJ did not question the VE regarding Plaintiff's carpal tunnel syndrome and how it affects the jobs the VE suggested.  Because the ALJ failed to consider all of Plaintiff's functional limitations, the determination that there are jobs in the national economy that Plaintiff is capable of performing is not supported by substantial evidence and remand to further develop the record is appropriate.  *See Capuano v. Saul*, No. 20-CV-3468, 2023 WL 2710404, at *9 (E.D.N.Y. Mar. 30, 2023) (remanding where ALJ failed to consider all of plaintiff's functional limitations when posing a hypothetical question to a vocational expert); *Goulbourne*, 2020 WL 3960504, at *7 (same).

## III.  Conclusion

For the foregoing reasons, the Court denies the Commissioner's motion for judgment on the pleadings and grants Plaintiff's cross-motion for judgment on the pleadings.  The

Commissioner's decision is vacated and this action is remanded for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).  The Clerk of Court is directed to close this case.

Dated:  September 6, 2023
        Brooklyn, New York

                                        SO ORDERED:


                                        ____/s/ MKB_____
                                        MARGO K. BRODIE
                                        United States District Judge